UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RACHELLE M. CHERRY, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 2:15-cv-00219-JMS-MJD |
| ) | |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration*, ) | |
| ) | |
| *Defendant*. ) | |

### ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Rachelle M. Cherry applied for disability and disability insurance benefits from the Social Security Administration ("SSA") in July 2012, alleging an onset date of June 2012. [Filing No. 12-2 at 15.] Her applications were denied initially on September 12, 2012, and upon reconsideration on October 29, 2012. [Filing No. 12-4 at 2; Filing No. 12-4 at 7.] Administrative Law Judge ("ALJ") William E. Sampson held a hearing on January 27, 2014, and issued a decision on February 13, 2014, concluding that Ms. Cherry was not entitled to receive benefits. [Filing No. 12-2 at 15-24.] The Appeals Council denied review on April 14, 2015. [Filing No. 12-2 at 7.] Ms. Cherry then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

### I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second, it requires

1

an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are

2

not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Cherry was fifty-three years old at the time of the hearing, [Filing No. 12-6 at 2], and has a high school education, [Filing No. 12-2 at 23], with previous work experience as a cook, factory worker and phone representative, [Filing No. 12-6 at 54].[1] Ms. Cherry met the insured status requirements of the Social Security Act through December 31, 2016. [Filing No. 12-2 at 17.] Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Cherry is not disabled. [Filing No. 12-2 at 24.] The ALJ found as follows:

---

[1] Ms. Cherry's detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Cherry, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

3

- At Step One of the analysis, the ALJ found that Ms. Cherry has not engaged in substantial gainful activity since June 1, 2012, her alleged onset date. [Filing No. 12-2 at 17.]

- At Step Two of the analysis, the ALJ found that Ms. Cherry suffered from the severe impairments of dysthymic disorder and anxiety. [Filing No. 12-2 at 17.]

- At Step Three of the analysis, the ALJ found that Ms. Cherry did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 18.]

- After Step Three and before Step Four of the analysis, the ALJ found that Ms. Cherry has the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: The claimant is limited to simple, routine, repetitive tasks. The claimant is limited to occasional interaction with coworkers and supervisors and no interaction with the general public." [Filing No. 12-2 at 20.]

- At Step Four of the analysis, the ALJ concluded that the claimant is unable to perform any past relevant work. [Filing No. 12-2 at 22.]

- At Step Five of the analysis, the ALJ determined that there are jobs that Ms. Cherry can perform, including hospital cleaner, store laborer, hand packer and cleaner. [Filing No. 12-2 at 23.]

- Based on these findings, the ALJ concluded that Ms. Cherry is not disabled as defined by the Social Security Act and, thus, not entitled to the requested disability results. [Filing No. 12-2 at 24.]

Ms. Cherry requested that the Appeals Council review the ALJ's decision, but that request was denied on April 14, 2015, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 1.] Ms. Cherry filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Cherry makes three arguments in support of her appeal: the ALJ (1) failed to consider Listing 12.04C, [Filing No. 17 at 6]; (2) failed to incorporate her moderate limitations in concentration, persistence, or pace into the hypothetical posed to the Vocational Expert ("VE") and into the RFC determination, [Filing No. 17 at 7]; (3) erred in his assessment of Ms. Cherry's credibility, [Filing No. 17 at 12]. The Court will address each issue in turn.

### A. Listing 12.04C

Ms. Cherry argues that the ALJ erred in Step Three of the analysis because he failed to mention or consider whether Ms. Cherry's mental impairments satisfy Listing 12.04C. [Filing No. 17 at 6-7.] Ms. Cherry claims that she meets Listing 12.04C because she was living at Younity Village, which is a supportive living facility, and that she has a medically documented mental disorder. [Filing No. 17 at 7.] She further asserts that Younity Village provides "'subsidized, supported living opportunities for people with mental illness' . . . [and] 'eligible applicants are those who have a documented severe and persistent mental illness and [meet] the low-income guidelines.'" [Filing No. 17 at 7.]

In response, the Commissioner argues that the ALJ was "not required to specifically parse Listing 12.04 among its various sub-categories, i.e., 12.04C." [Filing No. 22 at 2.] The Commissioner claims that Ms. Cherry presented no evidence that she has an inability to function

5

outside of a highly supportive living arrangement, and that the ALJ was not required to engage in an exhaustive analysis. [Filing No. 22 at 2-3.]

In reply, Ms. Cherry points out that she has presented evidence sufficient for the ALJ to discuss whether she meets Listing 12.04C. [Filing No. 23 at 2.] She states that her mental impairments lasted more than two years, that she was living in Younity Village at the time of the hearing, and that she was getting a therapist to assist her with grocery shopping and other tasks. [Filing No. 23 at 2.] Ms. Cherry argues that the Commissioner offers a *post hoc* rationale that while Ms. Cherry was "living in the facility, there was no evidence presented that she could not function outside of a highly supportive living environment." [Filing No. 23 at 2.]

"If a claimant has an impairment that meets or equals an impairment found in the Listing of Impairments, a claimant is presumptively eligible for benefits." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. § 404.1520(d). In order to be found presumptively disabled, the claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. § 404.1525(d). The claimant bears the burden of proving that she meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The pertinent requirements of Listing 12.04C are:

> **12.04 Affective Disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involved either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:
>
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

\* \* \*

      3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

\* \* \*

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.04(C).

      Under Step Three of the analysis, the ALJ analyzed Listing 12.04 and Listing 12.06, and discussed "paragraph B" and its four subparts, which are factors not applicable to Listing 12.04C. [Filing No. 12-2 at 18.] The ALJ failed to mention or analyze Listing 12.04C. Thus, this is reversible error. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002); *See Barnett*, 381 F.3d at 668 ("In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing."). Contrary to the Commissioner's argument, Ms. Cherry points to sufficient evidence from the record to support her argument that an analysis of Listing 12.04C was required. First, the Commissioner does not dispute that evidence from the record shows that Ms. Cherry "had a mental disorder or that she was in a supportive living arrangement" at Younity Village. [Filing No. 22 at 2.] The Commissioner takes issue, however, with the fact that Ms. Cherry presents no evidence regarding her inability to function outside of a highly supportive living arrangement. But because the ALJ has a duty to fully and fairly develop the record, this is not a valid justification for the ALJ not to consider Listing 12.04C. *See, e.g., Minnick*, 775 F.3d at 938. It was the ALJ's duty to inquire into whether Ms. Cherry could or could not function outside a highly supportive living arrangement by analyzing the record and requesting additional information from Younity Village. Accordingly, the Court instructs that on remand, the ALJ must discuss whether Ms. Cherry meets or equals Listing 12.04C.

### B. The ALJ's Hypotheticals to the VE and RFC Determination

Ms. Cherry argues that the ALJ did not consider Ms. Cherry's moderate limitations in concentration, persistence, or pace when he failed to incorporate those limitations into his hypotheticals to the VE during the hearing or into his RFC determination. [Filing No. 17 at 9.] Ms. Cherry asserts that, "despite finding moderate difficulties, the ALJ did not address these difficulties in the hypothetical to the VE." [Filing No. 17 at 9.] Further, Ms. Cherry states that the ALJ's use of, "simple, routine and repetitive work" refers to "unskilled work," which the regulations define as work that can be learned by demonstration in less than thirty days. [Filing No. 17 at 9.] She argues that this description is unrelated to the question of whether an individual with difficulty maintaining concentration, persistence, or pace can perform such work. [Filing No. 17 at 9.]

In response, the Commissioner argues that one state agency physician, Dr. Johnson, found Ms. Cherry's concentration, persistence, or pace was moderately limited with respect to her ability to work with or around others without being distracted, but concluded that Ms. Cherry could handle simple to mildly complex instructions and could handle work with superficial interactions with coworkers, supervisors, and the public. [Filing No. 22 at 4.] The Commissioner argues that the ALJ did incorporate the concentration, persistence, or pace limitations as opined by the state agency physician. [Filing No. 22 at 5.] Moreover, the Commissioner claims that Ms. Cherry did not identify what restriction the ALJ should have added to the RFC to more adequately capture her limitations in concentration, persistence, or pace. [Filing No. 22 at 6.] The Commissioner argues that the ALJ accommodated every limitation from the state agency physician's opinion. [Filing No. 22 at 6.]

In reply, Ms. Cherry reiterates that the terms that the ALJ used of "simple, routine and repetitive work" refer to "unskilled work," or work that can be learned by demonstration in less than thirty days. [Filing No. 23 at 3.] Ms. Cherry further argues that the Commissioner appears to not believe that a restriction in adaptation impacts concentration, persistence, or pace, and claims that the ALJ attempts to argue only one restriction is applicable. [Filing No. 23 at 3.] She argues that the ALJ failed to include hypotheticals posed to the VE regarding all of her limitations, including moderate limitation in concentration, persistence, and pace. [Filing No. 23 at 4.]

Between Steps Three and Four of the analysis, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). The Seventh Circuit has held that an ALJ "must incorporate all of the claimant's limitations supported by the medical record" when posing a hypothetical to a VE and when making an RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *see also Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014) ("We have stated repeatedly that ALJs must provide VEs with a complete picture of a claimant's residual functional capacity. . . . [I]f the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations. . . . We require the VE to know about a claimant's limitations so that the VE does not refer to work that the claimant is not capable of undertaking"). If an ALJ fails to include all of this information, then the VE's hypothetical and the assessment are insufficient unless: (1) the VE independently viewed the claimant's medical records or heard testimony regarding the limitations in question; or (2) the ALJ phrased the hypothetical in such a way that "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619-20 (7th Cir. 2010). If the ALJ did not incorporate all limitations supported by medical records in the

9

hypothetical posed to the VE and did not use those limitations in determining the claimant's RFC, then remand is required. *Id.* at 621.

In his decision, the ALJ acknowledged that Ms. Cherry had moderate limitations in maintaining concentration, persistence, or pace. [Filing No. 12-2 at 22.] However, when the ALJ posed various hypotheticals to the VE to determine whether Ms. Cherry could perform any work, the ALJ did not include her moderate limitations in concentration, persistence, or pace. [Filing No. 12-2 at 48-50.] In determining her RFC, the ALJ merely found that Ms. Cherry can perform a full range of work at all exertional levels but with the following nonexertional limitations: simple routine, repetitive tasks with limited to occasional interaction with coworkers, supervisors and no interaction with the general public. [Filing No. 12-2 at 20.] This contradicts Seventh Circuit precedent. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) ("As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record."). There is no evidence that the VE examined any medical records, although the VE did hear testimony from Ms. Cherry about her mental health history at the hearing. [Filing No. 12-2 at 34-47.] However, the ALJ posed restrictive hypotheticals to the VE, and failed to pose the hypotheticals in a way that incorporated Ms. Cherry's moderate limitations in concentration, persistence, or pace. "[T]he most effective way to ensure that the VE is apprised fully of the claimant's limitations is to include all of them directly in the hypothetical." *O'Connor-Spinner*, 627 F.3d at 619. Accordingly, on remand, the ALJ should include Ms. Cherry's moderate limitations in concentration, persistence, or pace in the hypotheticals posed to the VE and provide an appropriate RFC analysis.

### C. Credibility

Ms. Cherry's final argument is that the ALJ erred in considering Ms. Cherry's credibility. [Filing No. 17 at 6.] She claims that a claimant can have sparse but disabling mental health treatment, and that she received treatment at the Doctors Hospital in the state of Ohio and from a therapist while living at Younity Village. [Filing No. 17 at 12.] She also claims that the ALJ rejected the evidence of post-traumatic stress disorder ("PTSD"), but that two doctors diagnosed her with that impairment. [Filing No. 17 at 13.] She argues that no medical expert was called by the ALJ to verify Ms. Cherry's disability. [Filing No. 17 at 13.]

The Commissioner in response argues that it was Ms. Cherry's burden to prove the severity of her illness. [Filing No. 22 at 8.] Further, the Commissioner claims the ALJ noted Ms. Cherry's PTSD, but felt that the evidence was more supportive of dysthymic disorder and that there was no need to call a medical examiner. [Filing No. 22 at 10.]

In reply, Ms. Cherry reiterates many of the same arguments. [Filing No. 23 at 4-7.]

Given that the Court is reversing the ALJ's decision on the first two issues, the Court need not address the merits of this issue. However, because there are no records from Younity Village or from Ms. Cherry's therapist during her time at the facility, the Court orders the ALJ to request those records in order to make a proper credibility determination.

### IV.
#### CONCLUSION

For the reasons stated herein, the Court **VACATES** the ALJ's decision denying Ms. Cherry's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment shall issue accordingly. On remand, the ALJ should analyze whether Ms. Cherry meets or equals Listing 12.04C, consider Ms. Cherry's moderate limitations of concentration, persistence, or pace into the hypotheticals posed to the VE and in the

11

RFC determination, and supplement the record with medical evidence from Younity Village and Ms. Cherry's therapist.

Date: June 14, 2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Meredith E. Marcus
DALEY DISABILITY LAW, PC
mmarcus@fdaleylaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov